# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| PRISCILLA SILVA, <br><br> Plaintiff, <br><br> v. <br><br> ENTIC, INC.; CARLOS DÍAZ, MANUEL ROSENDO, EDWIN FERNÁNDEZ, <br><br> Defendants | CIVIL No. 16-2311 (PAD) |

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
## UNDER Fed. R. Civ. P. 12(b)(6)

**TO THE HONORABLE COURT**:

**COMES NOW** Co-Defendant Edwin Fernández (hereinafter "Fernández"), through the undersigned counsel, and respectfully submits this Motion to Dismiss, based on the complaint's failure to state a claim upon which relief could be granted. First, the only claim against Fernández is time-barred, per the applicable one-year statute of limitations. Second, even if such sole claim were not time-barred, the averments of the complaint fail to reach the threshold of specificity and plausibility embedded in FED. R. CIV. P. 12(b)(6). In his support, Fernández states, expounds and prays as follows:

## I. INTRODUCTION

### A. THE COMPLAINT

1.1   The complaint, filed on July 7, 2016 (ECF No. 1), alleges the existence of diversity of citizenship and only includes claims based on Puerto Rico law. Plaintiff

1

Priscilla Silva (hereinafter "plaintiff" or "Silva") avers that she is a resident of Madrid, Spain (ECF No. 1, ¶ 1 at 1); and that defendants are residents of Puerto Rico and the State of Florida. (ECF No. 1, ¶¶ 2-5 1 at 1-2).

    1.2    Plaintiff's claims rely, *inter alia*, on P.R. Law 21 of December 5, 1990 (hereinafter "PR Law 21"). The complaint's allegations under Law 21 only concern co-defendants Entic, Inc., Carlos Díaz and Manuel Rosendo. (ECF No. 1, ¶¶ 9-18 at 2-4). Her claims under the Puerto Rico Libel and Slander Act, 32 L.P.R.A. § 3141, are also directed exclusively against those co-defendants, Entic, Díaz and Rosendo. (ECF No. 1, ¶¶ 25-29 at 5-6).

    1.3    As to Fernández, plaintiff pretends to tag on him a tortious interference claim, explicitly relying on Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. (ECF No. 1, ¶¶ 19-24 at 4-5). Specifically, the complaint states that "[i]n the summer of 2014 [plaintiff] was introduced to Edwin Fernández, an engineer who would collaborate in the installation of ENTIC's products" (ECF No. 1, ¶ 19 at 4); that "[i]n July 2014, Mr. Fernández was in charge of the process involving the installation of ENTIC technology in the Sheraton Hotel" (ECF No. 1, ¶ 20 at 5); that "[a]t the time of the installation in the Sheraton Hotel, Mr. Fernandez was aware that [plaintiff] was ENTIC's sales representative in Puerto Rico." (ECF No. 1, ¶ 21 at 5); and that "[as] Mr. Fernández began interacting with ENTIC and its executives, communications between [plaintiff] and ENTIC personnel began to diminish." (ECF No. 1, ¶ 22 at 5).

1.4     The complaint further states that "[i]n August of 2014, Mr. Fernandez created Advanced Energy Analytics, a limited liability corporation that provides consulting services based on data analysis of energy consumption. Subsequently ENTIC named Advanced Energy Analytics as its Channel Partner in Puerto Rico" (ECF No. 1, ¶ 23 at 5); and that "Mr. Fernández knowingly interfered with the contractual relationship held between [plaintiff] and ENTIC. Therefore Mr. Fernández should be held liable for intentionally interfering with a contractual relationship as provided by Puerto Rico's Civil Code (PR Laws Ann. Tit. 31, sec. 5141)." (ECF No. 1, ¶ 23 at 5).

1.5     As part of her PR Law 21 claim, plaintiff avers that she had a "verbal contract" with Entic (ECF No. 1, ¶ 10 at 3); and that, in accordance with such alleged verbal contract, she "developed and prepared the market and successfully introduced ENTIC to Puerto Rico." Also, that the *quid pro quo* for those efforts was that "ENTIC agreed to compensate Mrs. Silva in an amount equivalent to 15% of collected monthly revenue for the duration of resulting contracts in the Puerto Rico market." *Id*. (For the other efforts carried out by plaintiff, *see* ¶ 11 and 13).

1.6     Plaintiff adds that "[i]n July of 2014 the first ENTIC contract in Puerto Rico was signed with Sheraton Hotel." (ECF No. 1, ¶ 15 at 4); that "[a]fter the Sheraton Hotel contract was executed, ENTIC began to ignore Mrs. Silva's communication and inquiries as to the execution of a written representative contract. Simultaneously ENTIC named Edwin Fernández as its representative in Puerto Rico" (ECF No. 1, ¶ 16 at 4); and that "ENTIC unilaterally severed its professional relationship with [plaintiff] by the end of 2014

3

and ceased to recognize her as its representative in Puerto Rico. ENTIC refused to pay compensation for the Sheraton Hotel contract that resulted from Mrs. Silva's diligent efforts." (ECF No. 1, ¶ 17 at 4).

### B. SUMMARY OF THE ARGUMENT

1.7  Given those allegations, the latter date that plaintiff's tort claim against Fernández accrued was late 2014. *See* ECF No. 1, ¶ 17 at 4. So-called tortious interference with a contract is a tort under Article 1802 of the Puerto Rico Civil Code. The concomitant statute of limitations has a period of one (1) year. Given that the complaint was filed on July 6, 2016, more than one (1) year elapsed between the accrual date of that tort claim and the filing of the present action. Hence, the sole claim against Fernández is time-barred.

1.8  Moreover, even if such sole claim was not time-barred, the averments of the complaint fail to reach the threshold of specificity and plausibility embedded in FED. R. CIV. P. 12(b)(6). As discussed in the dismissal motion filed on September 6th by Entic, Díaz and Rosendo (ECF No. 4), the averments of the complaint are insufficient, as they fail to establish that plaintiff can plausibly fall under the protection of PR Law 21 of December 5, 1990, 10 PR Laws Ann. §§ 279-279h ("PR Law 21"). Moreover, the complaint fails to plausibly establish a claim of tortious interference, not only because there is no scenario here pointing to the existence of a sales representative agreement and of an interference with a contract; but because two crucial elements of the tortious interference claim are missing: Plaintiff fails to aver that the alleged contract had a fixed period of duration; and

also fails to aver facts, besides mere conclusions, as to the requirement that defendant Fernández had knowledge of her contract with Entic.

1.9     Finally, the initial pleading in this litigation is so insufficient and pointless that it does not describe at all the nature of Entic's business or what is it that Entic has to offer to clients or potential clients in Puerto Rico. That deficiency suggests that plaintiff does not even know what is it that she was allegedly selling or wanted to sell.

## II.    ARGUMENT

### A.    THE DISMISSAL STANDARD

2.1     Under Federal Rule of Civil Procedure 12(b)(6), the applicable inquiry is whether the allegations of the complaint, read in the light most favorable to the plaintiff, state a claim upon which relief can be granted. As the Court of Appeals for the First Circuit has explained, courts must apply a "forgiving standard" that requires the denial of a request for dismissal every time that "the well-pleaded facts, taken as true, justify recovery on any supportable legal theory." Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000). Explained further the Court:

> The jurisprudence of Rule 12(b)(6) requires us to consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice. From this amalgam, we extract the well-pleaded facts and draw all reasonable inferences favorable to the complainant.

*Id.* at 21-22 (citations omitted).

2.2     However, in doing so, courts should "eschew any reliance on bald assertions [and] unsupportable conclusions." Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir.

1987). That is, Rule 12(b)(6) "is not entirely a toothless tiger." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). A plaintiff is still "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F. 2d 513, 515 (1st Cir. 1988).

2.3     That is why Rule 8(a)(2) requires plaintiffs to provide in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Court of Appeals for the First Circuit held, eschewing bald assertions and unsupportable conclusions "is merely an application of Rule 8(a)(2), not a heightened pleading standard." Educadores Puertorriqueños en Acción v. Rey Hernández, 367 F.3d 61, 68 (1st Cir. 2004).

2.4     Moreover, courts must require plaintiffs to allege in their complaints "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). That means that plaintiffs have to nudge "their claims across the line from conceivable to plausible." *Id*. Otherwise, their complaints must be dismissed. *Id*. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S., at 678. In short, once the mere conclusions and formulaic allegations are discarded, the averments that qualify as factual allegations must state a plausible claim for relief. Otherwise, dismissal is the only appropriate result.

   **B.    THE TORTIOUS INTERFERENCE CLAIM IS TIME-BARRED.**

2.5     In <u>General Office Prods.</u> v. <u>A.M. Capen's Sons</u>, 115 D.P.R. 553 (1984), answering a certification request coming precisely from this United States District Court, the Puerto Rico Supreme Court held that Article 1802 of the Puerto Rico Civil Code allows for claims of tortious interference with a contract.

2.6     As this Court explained in <u>Ramos Baez</u> v. <u>Bossolo Lopez</u>, 54 F. Supp. 2d 121 (D.P.R. 1999), in Puerto Rico the applicable limitations period for a tort action, that is, for obligations arising from the defendant's fault or negligence, is one (1) year "from the moment the aggrieved person had knowledge of the injury." Of course, Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5298, sets such one-year limitations period. That one-year period begins to run one (1) day after the date of accrual. <u>Carreras-Rosa</u> v. <u>Alves-Cruz</u>, 127 F.3d 172 (1st Cir. 1997).

2.7     The Puerto Rico Supreme Court has held that a plaintiff has knowledge of the injury for prescription purposes when she has "notice of the injury, plus notice of the person who caused it." <u>Colón-Prieto</u> v. <u>Géigel</u>, 15 P.R. Offic. Trans. 313, 330 (1984). *See also* <u>Rodriguez-Suris</u> v. <u>Montesinos</u>, 123 F.3d 10, 13 (1st Cir. 1997) (citing Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5298 and observing that the aforementioned Puerto Rico statute of limitations applies even to medical malpractice actions, which also begins to run from "the time the aggrieved person has knowledge of the injury."

2.8     The Puerto Rico Supreme Court has also held that a plaintiff has knowledge of the injury for prescription purposes when she has "notice of the injury, plus notice of the person who caused it." <u>Colón-Prieto</u> v. <u>Géigel</u>, 15 P.R. Offic. Trans. 313, 330 (1984). A

7

plaintiff is deemed to have "knowledge" of the alleged damage when she "possesses, or with due diligence would possess, information sufficient to permit suit." Villarini-García v. Hospital del Maestro, 8 F.3d 81, 84 (1st Cir. 1993).

2.9     Hence, although knowledge of the injury has been construed as having both "notice of the injury" and "notice of the person who caused it," actual knowledge is nevertheless, "not required where, by due diligence, such knowledge would likely have been acquired." Id. That means that a plaintiff who has knowledge (or is deemed to have knowledge) of her injury cannot "wait for ... her injury to reach its final degree of development and postpone the running of the period of limitation according to ... [her] subjective appraisal and judgment'." Alicea v. Parrilla-Padilla, 1998 U.S. Dist. LEXIS 16838, at *9 (D.P.R. 1998)(Hon. Salvador E. Casellas, J.)(quoting from Rodríguez-Suris v. Montesino, 123 F.3d 10, 13 (1st Cir. 1997)).

2.10    The Puerto Rico Supreme Court has articulated the foundation upon which the statutes of limitations rests as follows: "The statutory limitation of actions protects ... a very concrete particular interest: the interest of an individual not to be exposed to old claims, of which memory has been lost, because silence has created an objective and reasonable confidence that the right or power would not be exercised." Agullo v. ASERCO, 104 P.R.R. 346, 351 (1975). Once prescription has been raised as an affirmative defense, the burden of proving interruption of the limitations period shifts to the plaintiff. Tokyo Marine & Fire Ins. v. Perez & Cia., 142 F.3d 1, 4 (1st Cir. 1998).

2.11    As part of its Law 21 claim, plaintiff avers that "[i]n July of 2014 the first ENTIC contract in Puerto Rico was signed with Sheraton Hotel." (ECF No. 1, ¶ 15 at 4); that "[a]fter the Sheraton Hotel contract was executed, ENTIC began to ignore Mrs. Silva's communication and inquiries as to the execution of a written representative contract. Simultaneously ENTIC named Edwin Fernández as its representative in Puerto Rico" (ECF No. 1, ¶ 16 at 4); and that "ENTIC unilaterally severed its professional relationship with [plaintiff] by the end of 2014 and ceased to recognize her as its representative in Puerto Rico. ENTIC refused to pay compensation for the Sheraton Hotel contract that resulted from Mrs. Silva's diligent efforts." (ECF No. 1, ¶ 17 at 4).

2.12    The complaint also states that "[i]n the summer of 2014 [plaintiff] was introduced to Edwin Fernández, an engineer who would collaborate in the installation of ENTIC's products" (ECF No. 1, ¶ 19 at 4); that "[i]n July 2014, Mr. Fernández was in charge of the process involving the installation of ENTIC technology in the Sheraton Hotel" (ECF No. 1, ¶ 20 at 5); that "[a]t the time of the installation in the Sheraton Hotel, Mr. Fernandez was aware that [plaintiff] was ENTIC's sales representative in Puerto Rico." (ECF No. 1, ¶ 21 at 5); and that "[as] Mr. Fernández began interacting with ENTIC and its executives, communications between [plaintiff] and ENTIC personnel began to diminish." (ECF No. 1, ¶ 22 at 5).

2.13    Thus, per plaintiff's allegations, the tortious interference claim accrued not later than at the end of 2014. Since she filed the instant action on July 6, 2016, the same is time-barred. There is nothing in the complaint indicating that plaintiff could not claim

9

within the year after the accrual of her Article 1802 claim. Certainly, her absence from Puerto Rico would not be a valid reason for excusing her lateness, particularly in a case where –as discussed in the dismissal motion filed by Entic, et al.– her presence in Puerto Rico is one of the requisites for the existence of the alleged contractual relationship which she claims that Fernández interfered with.

2.14    That is, absence from the jurisdiction where the events alleged in the complaint took place is not a proxy for the diligence required from would-be litigants, who always have to contend with statutes of limitations. In any event, given the inevitable passage of time, that absence demands extra efforts to preserve whatever rights the person in question wishes to preserve.

2.15    In sum, that inexcusable absence of diligence in preserving plaintiff's rights produces a mirror image: The peace of mind of potential defendants that they will not be required to defend from stale claims. That is a right stemming from Puerto Rico substantive law. Consequently, co-defendant Edwin Fernández hereby requests this Court to dismiss the sole claim filed against him. The tortious interference claim filed against Fernández is time-barred.

      C.      **THE TORTIOUS INTERFERENCE CLAIM FAILS ALSO ON THE MERITS**

2.16    Assuming, *arguendo*, that the tortious interference claim is not time-barred, the same is not actionable for another fundamental reason: The same fails on its merits. The averments of the complaint allow for no other conclusion.

2.17     <u>First</u>, Fernández herein adopts by reference the arguments advanced by Entic, Díaz and Rosendo in their motion to dismiss, section III.B.2 (<u>ECF No. 4</u> at 6-9). Given that the complaint fails to plausibly allege that plaintiff Silva is somehow protected by PR Law 21 or that she indeed had an exclusive Sales Representative status, there is no contract with which Fernández could have interfered.

2.18     <u>Second</u>, the complaint fails to establish the existence of a viable tortious interference claim. This Court has listed the elements of a tortious interference claim under Article 1802 of the PR Civil Code: 1)The existence of a contract; 2) that the defendant who interfered had prior knowledge of said contract; 3) that the plaintiff has suffered damages; and 4) a causal relationship between the defendant's interference and the damages suffered by the plaintiff. <u>A.M. Capens Co., Inc.</u> v. <u>American Trading</u>, 200 F.Supp. 2d 34, 48 (D.P.R. 2002)(citing the Puerto Rico Supreme Court decision in <u>General Office Products</u> v. <u>A.M. Capens Sons, Inc.</u>, *supra*, 115 D.P.R. 553; 15 P.R. Offic. Trans., 727, 734-735, 1984 WL 270915 (1984).

2.19     Moreover, relying on successive decisions of the Puerto Rico Supreme Court, this Court explained that tortious liability interference cannot be determined against a defendant when the underlying contract has no fixed period of time. That is, the third person interfering with the alleged contractual relation will not be held liable in an action for damages for tortious interference if the contractual relation is terminable at the parties' will. <u>A.M. Capens Co., Inc.</u> v. <u>American Trading</u>, 200 F.Supp. 2d at 48. (PR Supreme Court citations omitted).

2.20    In A.M. Capens, plaintiff alleged the applicability of PR Law 75, a statute that shares many features with PR Law 21; and this Court reached the legally correct and common sense result that "tortious interference can only occur under two circumstances: first, when Law 75 is applicable; and secondly, when, notwithstanding Law 75's inapplicability, the contract nevertheless has a fixed expiration term. Tortious interference can only be present under these two circumstances." 200 F.Supp. 2d at 49. *See also* Geva Engineering Grp., Corp. v. Furmanite America, Inc., 844 F.Supp. 2d 225, 229 (D.P.R. 2012), (a case involving a claim under PR Law 21, where this Court reiterated that "the Supreme Court of Puerto Rico has stated that to be able to state a claim for tortious interference, the contract must be for a fixed time period.").

2.21    In the present case, plaintiff does not aver that her alleged (verbal) Sales Representative contract had a fixed period of time. She only avers that there was a verbal contract of some sort; and that she tried, to no avail, to obtain a written agreement that in turn would give her exclusivity. (ECF No. 1, ¶ 10 at 3; ¶ 16 at 4). There is no mention of the existence of a written contract, as plaintiff's averments indicate that there was none; much less that the agreement, verbal or otherwise, had a fixed term. That defect is also fatal for plaintiff's tortious interference claim.

2.22    Plaintiff avers that Entic "agreed to compensate Mrs. Silva in an amount equivalent to 15% of collected monthly revenue for the duration of resulting contracts in the Puerto Rico market." (ECF No. 1, ¶ 10 at 3). Unfortunately for plaintiff, that allegation fails to provide the required facts plausibily establishing the aforementioned element of her

Article 1802, tortious interference claim. After all, that alleged understanding with Entic is consistent with at at-will relationship, instead of one with a fixed duration. In that scenario described by the complaint, plaintiff could get clients for Entic and be paid the 15% while continuing her relationhip with Entic, and also after the same ended. Indeed, that arrangement as described by plaintiff is more consistent with an at-will relationship, as she would benefit from receiving the 15% as long as the contracts with the clients yielded revenue for Entic, even after she stops selling Entic's "products and services."9 (ECF No. 1, ¶ 13 at 3).

2.23 Moreover, the complaint gives no indication whatsoever that Fernández knew of the alleged contractual relationship between plaintiff and Entic, particularly because plaintiff can only offer that what existed between her and Entic was a "verbal contract." Verbal contracts are not the kind of stuff whose existence can be easily discovered by third parties like Fernández, much less the terms and conditions of such a phantom relationship. That is likely why, as to that second element mentioned in A.M Capens, *supra*, 200 F.Supp. 2d at 48 –knowledge by the defendant of the existence of a contract – plaintiff could only offer the conclusory statements that "[a]t the time of the installation in the Sheraton Hotel, Mr. Fernandez was aware that [plaintiff] was ENTIC's sales representative in Puerto Rico." (ECF No. 1, ¶ 21 at 5); and that "Fernández knowingly interfered with the contractual relationship held between Mrs. Silva and ENTIC."(ECF No. 1, ¶ 24 at 5).

13

2.24    Thus, as to that element of her tort claim, plaintiff fails to state the "what, when and how" of the alleged knowledge, which she chose to recite as a conclusion. But, of course, conclusions are not the stuff that sufficient, worthy pleadings are made of. As this Court has said, a court should identify and disregard statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action. Geva Engineering Grp., Corp. v. Furmanite America, Inc., *supra*, 844 F. Supp. 2d at 225, 229. That is why the Supreme Court has stated that "Rule 8 [of the Federal Rules of Civil Procedure] ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, *supra*, 556 U.S. at 678.

2.25    Third, the plausibility of the tortious interference claim is also belied by other statements made in the complaint, which show that Fernández has always been acting as an engineer, not as a salesperson. Plaintiff avers that Fernández is "an engineer who would collaborate in the installation of ENTIC's products" (ECF No. 1, ¶ 19 at 4); that in "July 2014, Mr. Fernández was in charge of the process involving the installation of ENTIC technology in the Sheraton Hotel" (ECF No. 1, ¶ 20 at 5); and that in August, 2014, "Mr. Fernández created Advanced Energy Analytics, a limited liability corporation that provides consulting services based on data analysis of energy consumption." (ECF No. 1, ¶ 23 at 5).

2.26    Thus, the complaint provides no indication that co-defendant Fernández was or would be suddenly interested in becoming a salesman of some sort. The complaint itself avers that his activities were limited to "installation of ENTIC technology" and that even

the corporation he created merely provided "consulting services based on data analysis of energy consumption." That begs the question, Why would Fernández want to interfere with an alleged contractual relationship that made plaintiff a salesperson of Entic's products, given that Fernández is not a salesman? The complaint does not answer that question, while leaving the plaintiff asking for a leap of faith proscribed by Rules 8 and 12. (Indeed, Fernández holds a full-time job at a Pharmaceutical Plant and rides his bicycle or goes to the gym 5 or 6 times a week. Thus, he has no time to engage in sales; while plaintiff can not pretend to engage in sales in Puerto Rico while living in Spain. *See* Motion to Dismiss filed by Entic, et al., ECF No. 4, at 6; 7-8).

2.27   For sure, other statements in the complaint (that "[a]s Mr. Fernández began interacting with ENTIC and its executives, communications between Mrs. Silva and ENTIC personnel began to diminish " (ECF No. 1, ¶ 22 at 5); and that, after job at the Sheraton Hotel was performed, "ENTIC began to ignore [plaintiff's] communication and inquiries as to the execution of a written representative agreement (ECF No. 1, ¶ 16 at 4)), fail to save the day for plaintiff. After all, those averments, insufficient as they are for Rule 8 and Rule 12(b)(6) purposes, require a leap of faith and of logic, by asking the Court to assume causality out of an alleged simultaneity. Plaintiff's attempts at articulating a viable claim fail utterly.

2.28   On a final note, the complaint is so insufficient that it even fails to describe the nature of Entic's business, of its "products and services." The complaint does mention a contract that Entic signed with Sheraton Hotel (ECF No. 1, ¶¶ 15-17, at 4); the

15

"installation of ENTIC's products" (ECF No. 1, ¶ 19 at 4) and the installation of "ENTIC technology in the Sheraton Hotel" (ECF No. 1, ¶ 20 at 5). But, after reading the pleading, no one can answer the obviously pertinent question, What exactly does co-defendant Entic do? The reasonable suspicion is that plaintiff does not even know the answer to that question. That begs another question, which is whether plaintiff was indeed a salesperson; and whether she is indeed a "businesswoman" at all. (ECF No. 1, ¶ 28 at 6).

### III.   CONCLUSION AND PRAYER

Plaintiff's action should be dismissed as a matter of law. As to co-defendant Edqin Fernández, the complaint fails to state a minimally plausible tortious interference claim upon which a relief could be granted. The claim is time-barred; and it is otherwise without merit.

**WHEREFORE**, Co-defendant Edwin Fernández request the Court to dismiss the claim against him, with prejudice.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on September 20, 2016.

**I HEREBY CERTIFY** that on this date, we have electronically filed the foregoing Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

> *s/ Roberto A. Fernández Quiles*
> **ROBERTO A. FERNÁNDEZ QUILES**
> **USDC-PR No. 206301**
> 128 F.D. Roosevelt Ave., 2nd Floor
> San Juan, Puerto Rico 00918-2409
> Tel. 787-758-7819/ Fax 787-758-4152
> rfernandez@gcpsc.com;
> rafernandezlaw@gmail.com